# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2374 | **DATE** | December 14, 2000 |
| **CASE TITLE** | *WTM, Inc., et al. vs. William J. Hennek, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The court (1) grants defendants' motion to dismiss count III of plaintiffs' second amended complaint; (2) denies defendants' motion to dismiss count IV of plaintiffs' second amended complaint; and (3) denies defendants' motion to strike.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 15 2000 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | *eav* docketing deputy initials | 25 |
| | Mail AO 450 form. | SD-7 FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 00 DEC 14 PM 5: 47 | date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WTM, INC. and PENTAIR, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No: 00 C 2374 |
| | ) | |
| WILLIAM J. HENNEK, JR. and | ) | Judge James H. Alesia |
| ERNEST C. PAYNE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is defendants' motion to dismiss counts III and IV and to strike certain paragraphs of plaintiffs' second amended complaint. For the following reasons, the court grants in part and denies in part defendants' motion.

## I. BACKGROUND

Plaintiffs WTM, Incorporated ("WTM") and Pentair, Incorporated ("Pentair") (collectively "plaintiffs") bring this action against defendants William J. Henneck, Jr. ("Henneck") and Ernest C. Payne ("Payne") (collectively "defendants"). Pentair is a publicly traded company which manufactures and sells various products, including electronics enclosures. WTM is a wholly-owned subsidiary of Pentair. Defendants were the officers and directors of several companies (collectively "WEB") which manufactured metal enclosures for computers.

Around 1998 defendants decided to sell WEB. To facilitate this sale, defendants hired an investment banking company ("Billow Butler") to locate a buyer and effectuate a sale of WEB. In October of 1998, Billow Butler contacted Pentair, through a subsidiary, regarding the

purchase of WEB. During this period of solicitation, many documents were provided to Pentair regarding WEB's business status, including memoranda on "confidential information." These memoranda provided projected forecasts for sales based upon historical trends. In 1999, after conducting due diligence, WTM – a subsidiary of Pentair – purchased all of WEB's stock from defendants for in excess of $50 million. To effectuate this purchase, the parties signed a stock purchase agreement (the "Agreement").

Plaintiffs claim that the purchase of WEB was made in reliance on several representations made by defendants regarding their current and future status with Compaq, WEB's largest customer. According to plaintiffs, defendants represented that they had a strong relationship with Compaq and that their business dealings with Compaq were extensive. However, Compaq had withdrawn much of its business from WEB and has refused to conduct any new, substantial business with WEB. Plaintiffs argue that defendants knew of the disintegrating relationship with Compaq prior to the sale of WEB to plaintiffs but concealed that material information from plaintiffs. Plaintiffs now allege that the value of WEB was artificially inflated at the time of purchase and, consequently, the purchase of WEB resulted in substantial loss to plaintiffs. Any additional facts, the court will discuss in further detail under the relevant claim.

As a result of this dispute, plaintiffs have filed a four-count complaint against defendants. Count I is a claim for violation of the federal securities law, alleging that defendants violated various sections of the Securities Act and Rule 10b-5. Count II is a claim for breach of contract, alleging that defendants breached the warranties and representations made in the sale agreement. Count III is a claim for violation of the Minnesota Securities Act, alleging that defendants

participated in a fraudulent scheme and course of business. Count IV is a claim for violations of the Illinois' common law on fraud, alleging that defendants failed to disclose critical and significant material facts which plaintiffs relied upon and were, consequently, tricked by those omissions.

Defendant now brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Count III should be dismissed because the sale agreement entered into between the parties contained a choice-of-law provision which clearly stated that Illinois law governs. Therefore, defendants claim, plaintiffs cannot bring a claim under Minnesota law. Next, defendants argue that Count IV must be dismissed because the Agreement contained an indemnification clause which serves as plaintiffs' exclusive remedy. Finally, defendants argue that certain paragraphs of the complaint must be stricken, pursuant to Federal Rule of Civil Procedure 12(f), as immaterial and unduly prejudicial.

WTM is a Minnesota corporation with its principal place of business in Minnesota. Pentair is a Minnesota corporation with its principal place of business in Minnesota. Hennek is an Illinois citizen. Payne is a Wisconsin citizen. The defendants' companies are all Illinois corporations. Further, the amount in controversy exceeds $75,000. Thus, plaintiffs correctly allege that this court has jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332. In addition, this court has jurisdiction under 28 U.S.C. § 1331 as count I arises under federal law.

## II. DISCUSSION

### A. Standard for Deciding a Rule 12(b)(6) Motion to Dismiss

In addressing the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiffs. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987); *Cromley v. Board of Educ. of Lockport*, 699 F. Supp. 1283, 1285 (N.D. Ill. 1988). If, when viewed in the light most favorable to plaintiffs, the complaint fails to state a claim upon which relief can be granted, the court must dismiss it. *See* FED. R. CIV. P. 12(b)(6); *Gomez*, 811 F.2d at 1039. However, the court may only dismiss the claim if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

While the Federal Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

### B. Count III

Count III of plaintiffs' second amended complaint alleges that defendants violated sections 80A.23 and 80A.01 the Minnesota Securities Act. MINN. STAT. §§ 80A.23, 80A.01. In their motion to dismiss, defendants argue that, as part of the Agreement entered into between WTM and defendants, the parties agreed that Illinois law would govern the contract. Thus, defendants argue, plaintiffs cannot bring a claim under Minnesota law. Plaintiffs, on the other hand, argue that the violations alleged in count III relate to pre-contract actions by the defendants

4

and so are not governed by the Agreement. Further, plaintiffs contend that even if the Agreement did govern count III's allegations, the choice-of-law provision is not enforceable because it violates public policy.

First, with regard to plaintiffs' claim that the allegations relate to pre-contract actions, the court finds that the claims contained in those allegations are so related to the contract that there resolution is intimately connected with the terms of the contract. *See Boatwright v. Delott*, 642 N.E.2d 875, 877 (Ill. App. Ct. 1994). In count III, plaintiffs allege that defendants violated section 80A.23 of the Minnesota Securities Act. MINN. STAT. § 80A.23. Pursuant to that section, a person is civilly liable if he or she sells a security in violation of the statute. *Id.* The sale of the securities at issue was effectuated by the Agreement. Thus, the allegations in count III are governed by the choice-of-law provision in the Agreement. The court, therefore, will address the validity of the choice-of-law provision contained in the Agreement.

Paragraph 11(k) of the Agreement states that: "This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Illinois without giving effect to any choice or conflict of law provision or rule (whether of the State of Illinois or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Illinois." (Def. Mot. to Dismiss, Ex. A, ¶ 11(k).)

A court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Midway Home Entm't Inc. v. Atwood Richards Inc.*, No. 98 C 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998). Thus, this court will apply Illinois law in determining whether a choice-of-law provision is enforceable. *See id.* Under Illinois law, an express contractual

5

choice-of-law provision will be enforced unless it (1) violates the fundamental public policy of Illinois and (2) Illinois has a "materially greater interest" in the litigation than the chosen state. *See Maher & Assocs., Inc. v. Quality Cabinets,* 640 N.E.2d 1000, 1006 (Ill. App. Ct. 1994). In fact, the public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties. *Id.; see also Potomac Leasing Co v. Chuck's Pub, Inc.,* 509 N.E.2d 751, 754 (Ill. App. Ct. 1987). Thus, in the present case, the key inquiry is whether the choice-of-law provision violates Illinois' fundamental public policy.

The Illinois Supreme Court has specifically stated that the public policy of Illinois "must be sought in its constitution, legislative enactments, and judicial decisions." *Midway,* 1998 WL 774123, at *2 (citing *Roanoke Agency, Inc. v. Edgar,* 461 N.E.2d 1365, 1371 (Ill. 1984)). The fact that a different state may provide certain statutory rights for a plaintiff which are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy. *See Midway,* 1998 WL 774123, at *2-3. In fact, Illinois courts have enforced parties' choice-of-law provisions even though the chosen state left plaintiff without recourse under another state's law. *See Midway,* 1998 WL 774123, at *3 (citing *Potomac Leasing,* 509 N.E.2d at 753-54). Further, Illinois courts have held that "a court should not refuse to apply the law of a foreign state, however unlike its own, unless it is contrary to pure morals and abstract justice, or unless the enforcement would be of evil example and harmful to its people." *Potomac Leasing,* 509 N.E.2d at 754 (citations omitted).

In this case, the choice-of-law provision, choosing Illinois law, is not contrary to the public policy of Illinois. Plaintiffs have not cited any Illinois legislative enactment, judicial

decision or constitutional provision that articulates a public policy against applying Illinois law to contract actions. *See Midway,* 1998 WL 774123, at *3; *see also Janice Doty Unlimited, Inc. v. Stoecker,* 697 F. Supp. 1016, 1020 (N.D. Ill. 1988) (enforcing a choice-of-law provision, selecting Georgia law, and refusing to allow a claim under the Illinois Consumer Fraud Act). Plaintiffs do argue that the choice-of-law provision violates public policy because it would prevent them from exercising their rights under Minnesota's security law. However, that argument relates to Minnesota's public policy, not Illinois', and does not override the choice of Illinois law. *See Potomac,* 509 N.E.2d at 754 (holding that, even though Michigan law did not require a notice of cancellation as Illinois' law mandated, that did not override the parties choice-of-Michigan-law provision); *see also Janice Doty,* 697 F. Supp. at 1019-20 (adopting the reasoning of the *Potomac* court). Moreover, plaintiffs are not devoid of remedy. In fact, plaintiffs have brought numerous claims, including a federal securities claim and Illinois common law claim, which would vindicate their rights. *See Bonny v. Society of Lloyd's,* 3 F.3d 156, 158-61 (7th Cir. 1993) (holding that a forum selection clause was enforceable, despite an anti-waiver provision in the securities statute, because plaintiffs' substantive rights would not be subverted given the foreign venue's law on fraud). Finally, Illinois is rationally related to the contract since defendants' WEB companies were incorporated in Illinois. *See Janice Doty,* 697 F. Supp. at 1020. Thus, this court finds that the parties' express choice-of-law provision is enforceable. Therefore, the choice-of-law provision bars the Minnesota Securities Act claim in count III. Accordingly, the court grants defendants' motion to dismiss count III of plaintiffs' complaint.

## C. Count IV

Count IV of plaintiffs' complaint alleges a claim of Illinois' common law fraud. Defendants claim that this count must be dismissed because, under the terms of the contract, plaintiffs' remedy is limited under the exclusive remedies clause. Plaintiffs, on the other hand, claim that they were fraudulently induced into entering the contract and that the language of such a fraudulent contract cannot be used to defeat a fraud claim. Further, the plaintiffs argue that the exclusive remedies clause does not bar reasonable reliance on representations made outside of the contract. Defendants reply that count IV does not state a claim for fraudulent inducement because there is no allegations of false representations for inducement into the contract.

The Agreement states, in pertinent part: "Buyer and Sellers acknowledge and agree that the foregoing indemnification provisions ... shall be the exclusive remedy of Buyer and Sellers with respect to the WEB Companies, and the transactions contemplated by this Agreement." (Defs. Mot. to Dismiss, Ex. A, ¶ 9(e).)

To state a claim for common law fraud under Illinois law, a plaintiff must allege: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making the statement; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir. 1990) (quoting *Bd. of Educ. v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989)). Thus, an element of a common law fraud claim is that the false statements induced the party into entering into a contract. *See id.*

8

While the law generally does not allow for tort recovery for what is essentially a breach of contract, it recognizes a clear exception where the fraud vitiates the making of the contract or where the plaintiff is fraudulently induced to enter into the contract in the first place. *See Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1361 (Ill. App. Ct. 1993). In their complaint, plaintiffs allege many specific statements which they claim defendants or their agent offered as true representations of WEB's commecialability when, plaintiffs claim, such representations were false. (Pls. Am. Compl. ¶¶ 39-45, 59-60.) Further, plaintiffs allege that such false representations were knowingly made by defendants (Am. Comp. ¶¶ 39-45, 59-60); that defendants knew of plaintiffs' reliance on these statements (*id.* ¶¶ 51-52, 54); and that these false statements "caused plaintiffs to enter into the purchase of securities" (*id.* ¶ 77). Thus, plaintiffs' complaint "may fairly be read as alleging that [they] would not have entered into the contract with defendant[s] but for the misrepresentations." *Johnson v. George J. Ball*, 617 N.E.2d at 1361. Because the courts clearly recognize that such a claim is an exception which allows a tort action when the contract was fraudulently induced, there is no bar to plaintiffs maintaining a separate cause of action based on fraud in the inducement.

Defendants argue that plaintiffs have not alleged a claim of fraud in the inducement and, therefore, this claim arises out of the contract and is barred by the exclusive remedies clause. In reviewing the law on this issue, the court was mindful that this is a motion to dismiss. Thus, while plaintiffs have not specifically labeled count IV as a fraud-in-the inducement claim, they have alleged sufficient facts to survive a motion to dismiss.

Accordingly, the court denies defendants' motion to dismiss count IV of plaintiffs' second amended complaint.

### D. Motion to strike

Defendants also move, pursuant to Federal Rule of Civil Procedure 12(f), to strike several paragraphs in plaintiffs' second amended complaint, arguing that those paragraphs contain allegations that are not material to plaintiffs' claims and that they are unduly prejudicial to defendants. In this motion defendants argue that those allegations relating to representations made by Butler – a non-party business broker who was only involved in pre-Agreement discussions – have no bearing on plaintiffs' claims and are, thus, immaterial. The court disagrees.

Under Rule 12(f) "the court may order stricken from any pleading ... any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). Courts generally disfavor motions to strike. *Tatum v. Davis*, No. 95 C 1341, 1996 WL 388405, at *1 (N.D. Ill. July 9, 1996). Moreover, courts will strike portions of a complaint only if the challenged allegations are so unrelated to the present claim as to be void of merit and unworthy of consideration. *See Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.*, No. 94 C 4692, 1996 WL 68009, at *1 (N.D. Ill. Feb. 14, 1996).

Plaintiffs have brought a common law fraud claim, alleging that they were induced to enter into the Agreement by representations made prior to signing the Agreement. Further, plaintiffs allege that Butler was a consultant retained by defendants to aid in the sale of WEB and acted as an agent with the "full knowledge, approval and authority" of the defendants. (Pls. Am.

Compl. ¶¶ 26, 37.) Thus, any allegedly fraudulent statements made by Butler could be attributed to defendants and, therefore, may be material to plaintiffs' common law fraud claim. Accordingly, the court denies defendants' motion to strike.

### III. CONCLUSION

For the foregoing reasons, the court (1) grants defendants' motion to dismiss count III of plaintiffs' second amended complaint; (2) denies defendants' motion to dismiss count IV of plaintiffs' second amended complaint; and (3) denies defendants' motion to strike portions of plaintiffs' second amended complaint. Accordingly, the court dismisses count III of plaintiffs' second amended complaint.

Date: DEC 14 2000

James H. Alesia
United States District Judge